# EXHIBIT B

# COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

AEROTEK, INC.

Plaintiff,

vs.

KALY OAKES and GREAT RIVER PROFESSIONAL SERVICES, d/b/a EXPRESS EMPLOYMENT PROFESSIONALS

Defendants.



People. Fit. Perfectly.™

January 20, 2010

VIA CERTIFIED MAIL

Ms. Kaly Oakes
17 Chapel Ridge Circle, Apt. #H
Marion, IA 52302

      Re:    Aerotek, Inc. ("Aerotek") Separation Agreement and Employment Agreement
             <u>Our Ref. No. M#10-004</u>

Dear Ms. Oakes:

      As Associate General Counsel of Aerotek, Inc. ("Aerotek"), I am writing to you regarding payments made to you under the Separation Agreement and Release executed by you on February 19, 2009 (the "Separation Agreement"). Copies of both the Separation Agreement and Release and your Employment Agreement executed by you on June 2, 2008 (the "Employment Agreement") are enclosed for your reference.

      We are aware that you are currently employed by Express Employment Professionals ("Express") in Cedar Rapids, Iowa. We understand that Express is an organization engaged in the business of recruiting and providing temporary staffing services and personnel to industry, and thus, is in direct competition with Aerotek.

      You will recall that the Employment Agreement contains the following restrictive covenants:

      3.    NON-COMPETE COVENANT: "EMPLOYEE agrees that upon the termination of EMPLOYEE'S employment, whether by AEROTEK or EMPLOYEE and whether with or without cause, for a period of eighteen (18) months thereafter EMPLOYEE shall not directly or indirectly engage in or prepare to engage in, or be employed by, any business that is engaging in or preparing to engage in any aspect of AEROTEK'S business in which EMPLOYEE performed worked during the two (2) year period preceding his/her termination of employment, within a radius of fifty (50) miles of the office in which EMPLOYEE worked at the time EMPLOYEE'S employment terminated or any other office in which EMPLOYEE worked during the two (2) years preceding termination of employment, or as much geographic territory as a court of competent jurisdiction deems reasonable. The prohibitions contained in this paragraph shall extend to (i) activities undertaken by EMPLOYEE directly on EMPLOYEE's own behalf, and to (ii) activities undertaken by EMPLOYEE indirectly through any individual, corporation or entity which undertakes such prohibited activities with EMPLOYEE's assistance and in or with respect to

www.aerotek.com
tel: 410.579.3500
fax: 410.579.3138
toll free: 800.927.8090

7301 Parkway Drive
Hanover, MD 21076

An Allegis Group Company

Ms. Kaly Oakes
January 20, 2010
Page 2

which EMPLOYEE is an owner, officer, director, trustee, shareholder, creditor, employee, agent, partner or consultant or participates in some other capacity.

4. NON-SOLICITATION COVENANT: EMPLOYEE agrees that upon the termination of EMPLOYEE's employment, whether by AEROTEK or EMPLOYEE and whether with or without cause, for a period of eighteen (18) months thereafter EMPLOYEE shall not directly or indirectly:

(a) Approach, contact, solicit or induce any individual, corporation or other entity which is a client or customer of any of the AEROTEK Companies, about which EMPLOYEE obtained knowledge by reason of EMPLOYEE's employment by AEROTEK, in an attempt to:

    (i) enter into any business relationship with a client or customer of any of the AEROTEK Companies if the business relationship is competitive with any aspect of AEROTEK's Business in which EMPLOYEE worked during the two (2) year period preceding termination of employment, or

    (ii) reduce or eliminate the business such client or customer conducts with the AEROTEK Companies; or

(b) Approach, contact, solicit or induce any Regular Employee of the AEROTEK Companies;

    (i) to provide services to any individual, corporation or entity whose business is competitive with any of the AEROTEK Companies, or

    (ii) to leave the employ of any of the AEROTEK Companies; or

(c) Approach, contact, solicit or induce any person who has been a Contract Employee within the two (2) year period prior to the date of termination of EMPLOYEE's employment and about whom EMPLOYEE obtained knowledge by reason of EMPLOYEE's employment with the AEROTEK Companies:

    (i) to cease working for any of the AEROTEK Companies at clients or customers of any of the AEROTEK Companies, or

    (ii) to refrain from beginning work for any of the AEROTEK Companies at clients or customers of any of the AEROTEK Companies, or

    (iii)  to provide services to any individual, corporation or entity whose business is competitive with any of the AEROTEK Companies.

As used in this Paragraph 4: "Regular Employee" means an employee of AEROTEK who is not a "Contract Employee"; and "Contract Employee" means an employee of any of the AEROTEK Companies who is or was employed to work at customers or clients of any of the AEROTEK Companies

  The prohibitions contained in (a), (b) and (c) above shall extend to (i) activities undertaken by EMPLOYEE directly on EMPLOYEE's own behalf, and to (ii) activities undertaken by EMPLOYEE indirectly through any individual, corporation or entity which undertakes such prohibited activities with EMPLOYEE's assistance and in or with respect to which EMPLOYEE is an owner, officer, director, trustee, shareholder, creditor, employee, agent, partner or consultant or participates in some other capacity."

  Furthermore, paragraph 6 of the Employment Agreement provides:

  6.  COVENANT NOT TO DIVULGE CONFIDENTIAL INFORMATION: EMPLOYEE covenants and agrees that, except as required by the proper performance of EMPLOYEE'S duties for AEROTEK, EMPLOYEE shall not use, disclose or divulge any Confidential Information of AEROTEK to any other person, entity or company besides the AEROTEK Companies. For purposes of this Agreement, "<u>Confidential Information</u>" shall mean information not generally known by AEROTEK's competitors or the general public concerning the AEROTEK companies and that AEROTEK Companies take reasonable measures to keep secret, including but is not limited to: their financial affairs, sales, and marketing strategy, acquisition plans, pricing and costs; their customers' names, addresses, telephone numbers, contact persons, staffing requirements, margin tolerances regarding pricing, and the names, addresses, telephone numbers, skill sets, availability and wage rates of its temporary or contract personnel; sales, recruiting, pricing and marketing techniques, sales and recruiting manuals, forms and processes for acquiring and recording information, financial controls, and management practices, procedures and processes.

  Your employment with Express appears to be in direct violation of your Employment Agreement. Moreover, we understand that you have contacted Aerotek clients and employees since joining Express, in direct violation of your obligation to Aerotek. Be advised that Aerotek expects you to abide by the terms of your Employment Agreement. We expect you to provide the undersigned with your written commitment to abide by the terms of your agreement in your present employment situation. Please be advised that we also are writing to Express notifying them of the existence of your Employment Agreement and requesting written confirmation from them that they will honor the terms of your Employment Agreement with Aerotek.

In addition, as stated in Paragraph 2 of the Separation Agreement, separation pay was paid to you in exchange for your "continued compliance with this Agreement and all applicable restrictive covenants to which you are bound." Also, in consideration for the separation payments, Paragraph 3b of the Separation Agreement acknowledges that "you agree to abide by any applicable restrictive covenants you may have with the Company, and to keep confidential any trade secret and any business, proprietary, confidential, or copyrighted information of the Company or its licensors which you acquired in connection with your employment."

Since you have violated the provisions of both your Separation Agreement and your Employment Agreement, Aerotek hereby demands the return of separation payments made to you in the amount of $1,903.86. Let us know by no later than the close of business on Friday, January 29, 2010 the manner in which you plan to refund to Aerotek this separation payment.

If we do not hear from you by Friday, January 29, 2010 and/or you continue to fail to honor your obligations, we will pursue injunctive relief and damages and will utilize all legal means available to ensure compliance with your obligations to Aerotek.

If you have any questions or would like to discuss this matter further, please contact me.

Very truly yours,

Jennifer M. Eyler,
Associate General Counsel